IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TIMOTHY J. HENSHAW, M.D., )
)
     Plaintiff, )
)
v. )
)
UNUM LIFE INSURANCE COMPANY OF )
AMERICA, ) Case No. 7:19CV303
)
**SERVE: Corporation Service Company** )
        **Registered Agent** )
        **Shockoe Slip Fl 2** )
        **Richmond, VA 23219-4100** )
)
     Defendant.

## COMPLAINT

The plaintiff, Timothy J. Henshaw, M.D. ("Dr. Henshaw"), by counsel, files this Complaint against the defendant, UNUM Life Insurance Company of America ("UNUM"), pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), and states as follows:

## PARTIES

1. Dr. Henshaw is and was at all times relevant to this action, a citizen and resident of Roanoke County, Virginia.

2. UNUM is a Maine corporation in good standing and authorized to do business and doing business in the Commonwealth of Virginia.

## JURISDICTION

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 in that the action arises under the laws of the United States.

4. Jurisdiction is also conferred upon this Court pursuant to 29 U.S.C. § 1132, which grants jurisdiction over ERISA claims.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, which authorizes that civil actions may be brought in a judicial district in which a substantial part of the acts or omissions giving rise to the claim occurred. The acts or omissions giving rise to this claim occurred in the Western District of Virginia, Roanoke Division.

6. Venue is also conferred upon this Court pursuant to 29 U.S.C. §§ 1132 and 1303 in that UNUM's violations of its obligations under ERISA occurred in the Western District of Virginia, Roanoke Division.

7. Dr. Henshaw has complied with all jurisdictional prerequisites applicable to an ERISA action. He administratively appealed UNUM's cutoff of his long-term disability ("LTD") benefits and his administrative appeal was thereafter denied by UNUM. Dr. Henshaw has exhausted his administrative remedies.

## SUMMARY

8. Dr. Henshaw was a practicing physician who developed a debilitating neurological disease in approximately 2000. He was forced to give up his medical career in 2001 when he became completely and permanently disabled. UNUM paid Dr. Henshaw LTD benefits for over 17 years, then cut them off based on the false claim that Dr. Henshaw could engage in gainful, part-time employment as "Physician Consultant" making in excess of $150,000.00 per year, working no more than 20-25 hours per week – an amount of time UNUM's own hand-picked physician admitted was his "maximum capacity."

9. On administrative appeal, Dr. Henshaw submitted expert vocational evidence rebutting this claim and pointing out that this vocation is nothing like anything he has ever done or could do. UNUM was forced to acknowledge these facts and admit that "the Physician Consultant occupation does not represent the work Dr. Henshaw currently performs." However, UNUM then stated that it would uphold its decision cutting off Dr. Henshaw's LTD benefits based on the equally false claim that he could earn the same amount of money (over $150,000.00 per year) working the same number of hours (no more than 20-25 hours per week) as a "Medical Expert Witness."

10. UNUM made this claim for the <u>first time</u> in its denial of Dr. Henshaw's administrative appeal. UNUM never provided Dr. Henshaw an opportunity to challenge or rebut this decision. When Dr. Henshaw submitted additional expert medical, vocational and legal evidence to rebut UNUM's latest claim, UNUM refused to consider his evidence and reconsider its denial. UNUM improperly relied on a new rationale to uphold its termination of Dr. Henshaw's LTD benefits and refused to engage in a meaningful dialogue with Dr. Henshaw concerning this new rationale and new evidence it relied upon to cut off Dr. Henshaw's benefits. UNUM breached its fiduciary duty to Dr. Henshaw, abused its discretion and failed to provide Dr. Henshaw with a full and fair review of his claim.

## FACTS

11. Dr. Henshaw is and was, at all times relevant times, a participant in an Employee Welfare Benefit Plan ("Plan"), as defined by ERISA, 29 U.S.C. § 1002(1), sponsored by his former employer, LGC, Inc. (Lewis Gale Clinic). The Plan included, among other things, LTD insurance and benefits.

12. UNUM is the insurance carrier funding the LTD benefits provided under the Plan.

13. UNUM provides the LTD benefits under the Plan pursuant to a group insurance policy denominated as Group Policy Number 535968 001, a group policy issued by UNUM and held by the policyholder, LGC, Inc. ("Policy").

14. Upon information and belief, the Policy is the controlling plan document.

15. The Policy's effective date is April 1, 1999.

16. UNUM serves as the claims administrator and insurer and is delegated all plan administration responsibilities of and for the Plan and Policy. UNUM is a fiduciary under the Plan and Policy, as defined by ERISA.

17. UNUM acts as plan administrator, claims administrator and insurer, determines participants' eligibility for benefits and pays such benefits. UNUM thereby acts under an inherent conflict of interests subjecting its decisions, including its interpretation of the Policy and its decision to cut off Dr. Henshaw's LTD benefits (after 17 years), to an abuse of discretion standard of review in which UNUM's conflict of interests is considered in determining the reasonableness of its decisions.

18. On or about January 16, 2001, Dr. Henshaw became completely and permanently disabled as defined in the Policy. At all times relevant hereto, he has remained completely and totally disabled, as defined in the Policy.

19. Dr. Henshaw, at all relevant times, has suffered from and continues to suffer from Charcot-Marie-Tooth ("CMT") syndrome, a debilitating neurological condition that never improves and continues to worsen over time. Dr. Henshaw was a practicing physician in the field of Internal Medicine and Rheumatology at Lewis Gale Clinic in Salem, Virginia prior to becoming completely and totally disabled. Dr. Henshaw has not practiced as a physician since January 16, 2001, when he became completely and totally disabled. While he remains licensed as a physician, he has not been board-certified for many years. Dr. Henshaw remains completely

and totally disabled. He has no prospect of ever being able to return to full-time work as a practicing physician, or anything else, a fact UNUM admits.

20. Dr. Henshaw's current medical restrictions as a result of his CMT syndrome include, without limitation, the following: he must lie down two times per day for 10-30 minutes; he must take frequent breaks including lying down with his legs elevated; he must elevate his legs above his heart 25% or more of the time in an eight hour day; and he must lie down and rest at frequently unpredictable times. All of these medical restrictions were communicated to UNUM by Dr. Henshaw's treating physicians and physical therapist.

21. Indeed, in an Independent Medical Evaluation dated February 15, 2018, UNUM's own hand-picked physician, Dr. Richard L. Wilson, Jr. of Ability Physical Medicine and Rehabilitation, Inc., Blacksburg, Virginia, concluded that Dr. Henshaw is physically limited and reasonably restricted from performing full-time, sedentary occupational duties. Dr. Wilson also concluded that Dr. Henshaw's CMT's "neuropathic nature" substantially limits his ability to ever build tolerance for such work. Dr. Wilson noted that Dr. Henshaw could work a maximum of five hours per day, five days per week on a semi-predictable basis. He noted that Dr. Henshaw is substantially limited in the sustained use of his hands, has to elevate his legs, has limited stamina and has difficulty meeting deadlines. Dr. Wilson further concluded that Dr. Henshaw is restricted from performing full-time, sedentary work.

22. Dr. Henshaw's treating physician, Dr. Timothy L. Hormel, a neurologist at Valley Neurology Associates, P.C., Salem, Virginia, at all relevant times, has opined that Dr. Henshaw is totally disabled, as defined in the Policy. In addition, Bill Mercer, physical therapist at Professional Therapies of Roanoke, Inc., opined in his March 2, 2018 Functional Capacity Examination that Dr. Henshaw's ability to consistently perform a seated, repetitive task in the competitive job market would be negatively impacted by his limited positional tolerances, the

documented poor fine motor control of both hands, and his need to take frequent breaks including lying down with his legs elevated. Additionally, Mr. Mercer concluded that Dr. Henshaw's poor balance and less than optimal gait mechanics make him more likely to sustain a fall.

23. As a result of Dr. Henshaw's disability, he had to cease working as a practicing physician. He has been unable to return to his job or any other full-time job since January 16, 2001.

24. Shortly thereafter, Dr. Henshaw applied for short- and long-term disability benefits under the Policy in accordance with the procedures outlined therein. Dr. Henshaw qualified for and was paid such short- and long-term disability benefits, beginning in 2001.

25. When Dr. Henshaw qualified for and began receiving LTD benefits from UNUM in 2001, he was 40 years old. He could have done nothing with the remainder of his professional life and continued to collect LTD benefits until age 65 under the terms of the Policy. To his credit, however, in approximately 2003, he began working as an independent contractor for a business his wife established, Atlantic Technical Consultants ("ATC"). This work provided Dr. Henshaw an opportunity to return to limited vocational activity, in work that required medical training and knowledge. He worked as a subcontractor of ATC working from home reading medical records and researching medical issues for Roanoke area attorneys who were developing medical evidence for their legal cases. Dr. Henshaw never worked more than 25 hours per week. In addition to working as a subcontractor for ATC, he volunteered as a staff rheumatologist at the Bradley Free Clinic in Roanoke, Virginia, treating a very limited number of patients as and when he could.

26. UNUM's hand selected IME physician acknowledges that Dr. Henshaw's current work activity of about 5 hours per day, 5 days per week is his maximum capacity and ability.

6

The work Dr. Henshaw has performed for ATC is expressly permitted under the terms of the Policy which permits a claimant to work while disabled. Over the approximate 15 years Dr. Henshaw has performed such work, UNUM has periodically reviewed, as is its right, Dr. and Mrs. Henshaw's tax returns and financial information to insure his earnings do not exceed the amount permitted under the Policy. They do not.

27. As part of his ongoing eligibility for LTD benefits, Dr. Henshaw's treating neurologist, Dr. Hormel, and other medical providers and his physical therapist consistently reported that he is completely and totally disabled. UNUM paid Dr. Henshaw LTD benefits for over 17 years.

28. Inexplicably, on May 7, 2018, UNUM claimed that Dr. Henshaw could perform gainful part-time employment that would pay him the gainful employment per-hour wage (totaling more than $150,000.00 per year) necessary to terminate benefits under the Policy. UNUM concluded that Dr. Henshaw is no longer disabled because he could gainfully perform the occupation "Physician Consultant" on a part-time basis, working no more than 20-25 hours per week. UNUM cut off Dr. Henshaw's LTD benefits effective May 8, 2018.

29. On or about August 31, 2018, Dr. Henshaw filed a timely administrative appeal of UNUM's decision. Dr. Henshaw submitted evidence establishing that the job "Physician Consultant," the job classification UNUM used to cut off Dr. Henshaw's LTD benefits, is nothing close to what Dr. Henshaw does or can physically do. Dr. Henshaw submitted expert evidence from a vocational rehabilitation counselor/vocational expert and a Ph.D. professor of economics and labor economist at Roanoke College and other evidence, including other expert evidence.

30. Dr. Henshaw's evidence established that UNUM's vocational analysis was flawed and inaccurate and that his vocational activity (working for ATC and volunteering at the Bradley

Free Clinic) cannot be compared to competitive employment. Among other reasons, Dr. Henshaw cannot attend work on a regular schedule, must elevate his feet, must lie down and take naps in the middle of the day, and cannot perform work activity on a consistently reliable and predictable schedule. Dr. Henshaw's evidence also established that there is no job in the Roanoke area (the relevant labor market), apart from his work for ATC, that replicates his work for ATC. Dr. Henshaw's work there uniquely accommodates his skill, experience and disabilities. Dr. Henshaw is currently maximizing his earnings potential and can do no better in another position or some combination of jobs. Dr. Henshaw has never earned $150,000.00 per year in his part-time work while disabled.

31. By letter dated October 30, 2018 and following its administrative review, UNUM upheld its cut off of Dr. Henshaw's LTD benefits. In doing so, UNUM changed its explanation. It found, as Dr. Henshaw had argued on appeal, that the "Physician Consultant" occupation does not represent a gainful occupation Dr. Henshaw could perform on a part-time basis. However, UNUM concluded that, instead, Dr. Henshaw could work as a "Medical Expert Witness" on a part-time basis and earn the same gainful wage (more than $150,000.00 per year) that justifies terminating his benefits. UNUM made this determination for the first time in denying Dr. Henshaw's administrative appeal. UNUM had never previously communicated to Dr. Henshaw its claim or rationale that he could perform this vocation gainfully on a part-time basis. Accordingly, Dr. Henshaw never had the opportunity to rebut this claim or offer any evidence in opposition to this new determination by UNUM.

32. Accordingly, by letter dated March 11, 2019, Dr. Henshaw requested that UNUM reconsider its decision denying his administrative appeal. Dr. Henshaw pointed out that UNUM had never before made this claim and he had never had an opportunity to respond to or rebut it. Dr. Henshaw requested that UNUM reconsider its denial of his administrative appeal, both as a

8

matter of fundamental fairness and consistent with UNUM's obligations as an ERISA fiduciary. UNUM refused.

33. By letter dated March 13, 2019, two days after Dr. Henshaw submitted his request for reconsideration, UNUM summarily denied the request without considering it on the merits or considering any of the evidence, including additional expert vocational and medical evidence, Dr. Henshaw had submitted.

34. The evidence Dr. Henshaw submitted establishes that he is not now gainfully employed and he cannot work as a medical expert witness. The vocational and earnings data cited by UNUM is not relevant to any potential part-time work as an expert witness. Dr. Henshaw's medical condition does not and would not permit him to testify as an expert witness. Dr. Henshaw has not testified as an expert. Dr. Henshaw's request for reconsideration included sworn testimony from two leading Roanoke, Virginia trial attorneys, including a past president of the Virginia Trial Lawyers Association who testified that Dr. Henshaw cannot perform the duties of a medical expert witness and that they (and likely other trial attorneys) would not hire him in such a role.

35. Again, in less than two full days and without considering the request for reconsideration on the merits, UNUM summarily rejected Dr. Henshaw's request. UNUM upheld its earlier denial of his administrative appeal based on its newly concocted claim that he could serve part-time, gainfully as a medical expert witness. UNUM never provided Dr. Henshaw a chance to rebut this determination made, for the first time, after Dr. Henshaw submitted his evidence in support of his administrative appeal. Accordingly, UNUM has failed to perform a full and fair review of Dr. Henshaw's claim in violation of 29 U.S.C. § 1133 and applicable ERISA regulations, 29 C.F.R. § 2560.503-1.

36. The hallmark of a "full and fair review" within the meaning of ERISA includes the claimant's right to know what evidence the fiduciary (here, UNUM) relied upon; the claimant having an opportunity to address the accuracy and sufficiency of that evidence; and the claimant's right to have the fiduciary (here, UNUM) consider all evidence presented. UNUM failed to undertake the required full and fair review and failed to engage in a meaningful dialogue with Dr. Henshaw concerning the evidence and rationale UNUM relied upon. UNUM never gave Dr. Henshaw an opportunity to respond to its final evidence and rationale for the denial of benefits.

37. UNUM's termination of Dr. Henshaw's LTD benefits on May 7, 2018 (after 17 years), its denial of Dr. Henshaw's administrative appeal on October 30, 2018 and its total refusal to even consider his request for reconsideration on March 13, 2019, were not reasonable and were not supported by substantial evidence. UNUM's actions were also a breach of its fiduciary duty owed to Dr. Henshaw. UNUM's actions also deprived Dr. Henshaw of a full and fair review of his claim.

38. At all relevant times, Dr. Henshaw has followed all applicable procedures for the benefit application process, the process of proving ongoing entitlement to benefits and the administrative review and appeal process relating to UNUM's improper cut off of Dr. Henshaw's LTD benefits after more than 17 years. Notwithstanding Dr. Henshaw's compliance with all required procedures under the Policy, UNUM improperly cut off Dr. Henshaw's LTD benefits – after paying them for over 17 years. UNUM did so ultimately based on the concocted claim that he could perform gainful part-time work as a medical expert witness. UNUM communicated that claim for the first time when it denied Dr. Henshaw's administrative appeal. UNUM never afforded Dr. Henshaw the opportunity to rebut that decision with evidence of his own. UNUM

abused its discretion, breached its fiduciary duty and failed to undertake a full and fair review of Dr. Henshaw's claim.

## COUNT I – DENIAL OF BENEFITS CLAIM

39. Dr. Henshaw incorporates all prior paragraphs herein.

40. On or about January 16, 2001, Dr. Henshaw became totally disabled, as defined by the Policy. From that date to the present, he has remained continuously and totally disabled.

41. UNUM improperly cut off Dr. Henshaw's LTD benefits (after paying them for over 17 years) to which he is entitled under the terms of the Policy, effective May 8, 2018.

42. UNUM's cut off of Dr. Henshaw's LTD benefits constitutes a violation of ERISA, 29 U.S.C. § 1132. The denial was not reasonable, was not supported by substantial evidence, was a breach of fiduciary duty, and was an abuse of discretion.

43. UNUM also failed to undertake a full and fair review of Dr. Henshaw's claim in violation of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1.

44. As a direct and proximate result of UNUM's unlawful actions, Dr. Henshaw has been denied monthly LTD benefits since May 8, 2018 to which he is and has been entitled.

45. In terminating Dr. Henshaw's benefits, UNUM's claims adjudication process and administrative appeal process was tainted by a conflict of interest.

## PRAYER FOR RELIEF

WHEREFORE, Timothy J. Henshaw, M.D. demands judgment in his favor and against UNUM Life Insurance Company of America and the following relief:

1. An award of long-term disability benefits due and owing from May 8, 2018 to the date of judgment, or as otherwise required under the terms of the Policy;

2. A declaration of Dr. Henshaw's rights and benefits due under the Policy;

11

3. An injunction against the defendant continuing to refuse to reinstate Dr. Henshaw's long-term disability benefits;

4. An award to Dr. Henshaw of back long-term disability benefits dating from on or about May 8, 2018 forward;

5. The resumption of the payment of Dr. Henshaw's long-term disability benefits from the date of judgment forward under the terms of the Policy;

6. An award of pre-judgment interest at the applicable statutory rate from May 8, 2018 to the date of judgment;

7. An award of post-judgment interest at the applicable statutory rate from the date of judgment to the date all back long-term disability benefits listed above are paid;

8. An award, pursuant to 29 U.S.C. § 1132(g), of Dr. Henshaw's reasonable attorney's fees and costs incurred in this action;

9. In the alternative to an award of benefits listed in paragraphs 1, 4 and 5, above, a remand of the claim to the defendant claims administrator to consider Dr. Henshaw's March 11, 2019 request for reconsideration and for further development of the record to insure Dr. Henshaw's rights of full and fair review under 29 U.S.C. § 1133 and applicable ERISA regulations are met and with a corresponding award under 29 U.S.C. § 1132(g) of Dr. Henshaw's reasonable attorney's fees and costs incurred; and/or

10. An award of such further and additional relief as the Court deems proper.

**TIMOTHY J. HENSHAW, M.D.**

By: ___/s/ Kevin W. Holt___
      Of Counsel

Kevin W. Holt (VSB No. 42866)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
P.O. Box 40013
Roanoke, Virginia 24022-0013
Telephone: (540) 983-9300
Facsimile: (540) 983-9400
Email: holt@gentrylocke.com

*Counsel for Plaintiff*

14900/4/8795866v1